## APPEALS OF HANLEY-RIED & CO.

Docket Nos. 1395, 3020.　Submitted May 26, 1925.　Decided July 11, 1925.

> 1. A corporation the principal stockholder of which is a corporation not itself a personal service corporation, *held* not entitled to classification as a personal service corporation.
> 2. The activities of a corporation are necessarily vicarious, and not individual in the sense intended by section 200 of the Revenue Act of 1918.

*Wendell P. Barker*, Esq., and *Harlan S. Perrego*, Esq., for the taxpayer.
*J. Arthur Adams*, Esq., for the Commissioner.

### Before IVINS and MORRIS.

These appeals result from the Commissioner's refusal to accord the taxpayer classification as a personal service corporation for the years 1918 to 1921, inclusive. The deficiencies appealed from are as follows: 1918—$9,936.24; 1919—$12,136.72; 1920—$18,478.17; 1921—$11,809.90. From the pleadings, testimony, and documentary evidence the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is a New Jersey corporation with its principal place of business at Jersey City.

2. During 1919, a New York insurance brokerage concern known as Willcox, Peck & Hughes, Inc., and Henry S. Brown and E. U. Crosby, insurance brokers identified with the firm of Henry W. Brown & Co., of New York, organized a New Jersey corporation to engage in the insurance brokerage business under the name of Crane & Co.

3. The authorized capital stock of Crane & Co. was $25,000. The original plan to issue Crane & Co. stock for good will was found impracticable because the company required some money. Willcox, Peck & Hughes, Inc., paid $4,000 and took 50 per cent of the $14,000 par value of stock issued. Brown and Crosby took equal shares of the remaining stock issued, which was issued for good will. No evidence of the value of the good will was offered.

4. Crane & Co. was organized for the purpose of writing in New Jersey certain types of insurance that could not be legally written in New York.

Shortly after its organization the name was changed from Crane & Co. to J. W. Hanley & Co.

5. April 1, 1918, the corporation was reorganized under the name of Hanley-Ried & Co. At this time the taxpayer bought for $4,000 the stock held by Willcox, Peck & Hughes, Inc., and canceled the same. Capital stock in the amount of $20,000 was then issued, good will being the only consideration.

The reorganization entailed no change in the policy, purpose, or conduct of the business.

New interests were brought in, all being persons engaged as insurance brokers and desiring an outlet for business which they could not place in New York, similar to that afforded by the taxpayer to its original stockholders.

6. A capitulation of the percentages of stock ownership during the taxable years involved follows:

| Stockholder. | Jan. 1 to Apr. 1, 1918. | Apr. 1 to Dec. 31, 1918. | 1919. | 1920. | 1921. |
|---|---|---|---|---|---|
| | Per cent. | Per cent. | Per cent. | Per cent. | Per cent. |
| Willcox, Peck & Hughes, Inc. | 50 | 25 | 25 | 25 | 25 |
| H. S. Brown | 25 | 12½ | 12½ | 12½ | 12½ |
| E. U. Crosby | 25 | 12½ | 12½ | 12½ | 12½ |
| R. A. Corroon | | 25 | 25 | 15 | 15 |
| J. F. Corroon | | 6¼ | 6¼ | 6¼ | 6¼ |
| T. A. Duffey | | 6¼ | 6¼ | 6¼ | 6¼ |
| William Wick | | 6¼ | 6¼ | 6¼ | 6¼ |
| E. H. Fischer | | 3¾ | 3¾ | 3¾ | 3¾ |
| J. Healy | | 2½ | 2½ | 2½ | 2½ |
| W. J. Reynolds | | | | 2½ | 2½ |
| M. V. Corroon | | | | 7½ | 7½ |
| | 100 | 100 | 100 | 100 | 100 |

7. With one exception, all of the new stockholders from April 1, 1918, through the year 1921, were identified with a New York insurance brokerage firm known as R. A. Corroon & Co. William Wick severed his connection with that firm on April 1, 1918, to become office manager for the taxpayer.

8. The taxpayer's officers from April 1, 1918, through the year 1921, were: Fred J. Ried, president; William H. Thrall, treasurer;

James J. O'Hara, secretary. The three men mentioned were not stockholders. Ried was the taxpayer's claims adjuster. O'Hara was the policy checker, and Thrall attended to financial matters.

9. William Wick, owner of 6¼ per cent of the taxpayer's stock, was office manager and in immediate charge of the business. His duties required daily trips to the New York offices of Willcox, Peck & Hughes, Inc., Henry W. Brown & Co., and R. A. Corroon & Co. for conferences relative to the taxpayer's business.

10. Only a very small percentage of the taxpayer's business was obtained from sources outside the taxpayer's corporate and individual stockholders. The taxpayer did no business as a principal, assumed no risks of market fluctuations, owned no interest in any other corporation and employed no solicitors.

11. It does not appear that Willcox, Peck & Hughes, Inc., the largest stockholder of the taxpayer, was a personal service corporation during the years involved.

12. Premiums advanced by the taxpayer averaged monthly, during 1918, approximately $2,000; during 1919, approximately $3,200; during 1920, approximately $2,000; and during 1921, approximately $1,800.

The percentages of these advances to gross business ran from 1½ per cent to 5 per cent.

13. The taxpayer's balance sheets at the beginning and end of each year involved are as follows:

|  | 1918, Jan. 1. | 1919, Jan. 1. | 1919, Dec. 31. | 1920, Dec. 31. | 1921, Dec. 31. |
|---|---|---|---|---|---|
| **ASSETS.** | | | | | |
| Cash | $55,553.24 | $82,915.73 | $47,906.05 | $42,041.98 | $101,674.79 |
| Accounts receivable | 429.18 | 8,783.99 | 24,281.29 | ·3,011.49 | 2,524.20 |
| Notes receivable | | | 400.00 | 1,900.00 | |
| Loan receivable | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| Good will | 10,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 |
|  | 66,182.42 | 111,899.72 | 92,787.34 | 67,153.47 | 124,398.99 |
| **LIABILITIES.** | | | | | |
| Accounts payable | 15,641.75 | 56,695.19 | 44,468.75 | 38,006.17 | 93,337.34 |
| Revenue stamps | | | | 798.56 | 299.52 |
| Capital stock | 14,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 |
| Surplus | 36,540.67 | 35,204.53 | 28,318.59 | 8,348.74 | 10,762.13 |
|  | 66,182.42 | 111,899.72 | 92,787.34 | 67,153.47 | 124,398.99 |

The amounts shown as surplus at January 1, 1918, January 1, 1919, and December 31, 1920, included in each instance earnings for the prior year, and in each instance it was almost entirely distributed in dividends within a month or two after the statement.

DECISION.

The deficiencies determined by the Commissioner are approved.

OPINION.

IVINS: While it is apparent that the income of this corporation is attributable to the activities of its stockholders as a whole, there is cause for serious doubt that such income is to be primarily ascribed to the activities of the principal stockholders. However, since our opinion is to turn upon another point, a further discussion of this one is unnecessary.

In determining this appeal the Board has been presented with a basic principle involving the classification of a corporation as a personal service corporation. Can a corporation, the principal stockholder of which is not itself a personal service corporation, be itself a personal service corporation?

Under section 200 of the Revenue Act of 1918 it is essential among the attributes of a personal service corporation that it be "a corporation whose income is to be ascribed primarily to the *activities* of the principal owners or stockholders *who are themselves regularly engaged in the active conduct of the affairs of the corporation.*" (Italics ours.)

Congress recognized the fact that there are many business enterprises which, although nominally corporations, are in a real sense partnerships, in that the income of the enterprise is derived from the personal efforts of the stockholders rather than from the employment of the capital invested in the business. In a real sense the earnings of the corporation are the individual earnings of a group of individuals composing it.

The imposition on such enterprises of the high brackets of taxation designed to reach the earnings of corporations generally was sought to be avoided, since it would tax the personal earnings of such individuals operating in corporate form and they would be taxed again (at surtax though not normal rates) upon their dividends. It was accordingly provided that such corporations should be taxed as partnerships.

The concept underlying the whole theory of personal service corporations was to give relief to those corporations, the income of which was primarily attributable to the personal and individual activities of the principal stockholders.

We think Congress intended that the activities be personal in the sense of being individual. Without question a corporation can not be said to have individual activities. It is an artificial entity, the activities of which are necessarily vicarious and not individual.

It is unnecessary to discuss our views on a situation where the corporate stockholder is shown to be itself a personal service corporation. That point must be reserved for a state of facts upon which to predicate it.

To the objection that the stock held by Willcox, Peck & Hughes, Inc., might well have been held by individuals, as was that of the Corroon interests, there is the sufficient answer that it was not so held and that we must decide on the facts as they actually existed.

We conclude, therefore, that the taxpayer is not entitled to classification as a personal service corporation.